[No. 31467. Department One. November 25, 1950.]

ED. H. FRIIS, *Respondent and Cross-appellant,* v. LESTER
BROWN *et al., Appellants.*[1]

*LaFollette & Savage,* for appellants.

*Claude K. Irvin* and *Don Miles,* for respondent and cross-appellant.

SCHWELLENBACH, J.—December 8, 1947, Bielas & O'Shaughnessy, contractors, entered into a written contract to con-

[1]Reported in 224 P. (2d) 330.

struct a house in Pullman for Lester R. Brown. They agreed to complete construction on or before March 1, 1948. The agreed price was $10,410.50, to be paid as follows: $1,250 when basement was completed; $1,500 when house roughed in and ready for roofing; $2,500 when heating and plumbing installed; $2,000 when house ready for plastering; $1,500 when ready for painting; $375 when house completed and accepted by owner; balance when garage, sidewalks and yard grading completed.

Bielas & O'Shaughnessy started the construction of the house under the contract. January 13, 1948, they ordered a furnace from Walter Berger of Moscow, Idaho. It was shipped January 15th by motor freight to the Brown property and consigned to Bielas & O'Shaughnessy. They never paid for the furnace. In fact, sometime in March, because of financial difficulties, they abandoned the contract and stepped out of the picture.

About that time, Friis was employed by Brown to install the furnace. After the completion of the work, and on September 28, 1948, Friis filed a notice of lien on Brown's property for work and labor of the alleged value of $1,551.41, of which $700 had been paid, leaving a balance due of $851.41. The notice stated that the furnishing of labor and material commenced March 27, 1948, and ceased September 23, 1948. September 29th, Brown paid Friis $341.57. This action was commenced to foreclose a lien in the amount of $509.84.

The trial court denied the foreclosure of the lien on the ground that the lien notice was not filed within the statutory period; held that defendants agreed to pay plaintiff the reasonable value of the furnace and awarded judgment to plaintiff in the sum of $499.55 plus costs. This appeal follows. Friis is cross-appealing from that portion of the judgment denying foreclosure of the lien.

The principal issue in controversy is whether or not the Browns should pay Friis for the value of the furnace in addition to paying for its installation. As is usual in lien foreclosure actions, the testimony is in direct conflict. Friis

testified that he makes a practice of furnishing the materials and making some profit on them; that he refused to do the installation unless he could install *his* furnace. Friis and Berger testified that it was agreed between Brown and them, before the work commenced, that Friis would buy the furnace in question from Berger and then sell it to, and install it for, Brown. On the other hand, the Browns denied any such agreement, contending that the furnace belonged to them by virtue of a payment made to Bielas & O'Shaughnessy under the contract. It is clear from the evidence that, on April 8th, Friis paid Berger $375 for the furnace.

Appellants contend that this was an oral promise to pay the debt of another and is barred by the statute of frauds. There is no question but that Berger originally sold the furnace to Bielas & O'Shaughnessy. Mrs. Brown testified as to the following payments to the contractors: December 9, 1947, twelve hundred fifty dollars when the basement was completed; December 22, 1947, fifteen hundred dollars when the house was roughed in and ready for roofing; January 21, 1948, *two thousand dollars,* "That represents when they should have the plumbing and heating installed"; February 27, 1948, five hundred dollars so the contractors could pay labor; March 19, 1948, two hundred dollars for labor.

The contract called for the payment of twenty-five hundred dollars when the heating and plumbing were installed. The furnace was never installed by the contractors, and, under the contract, they were not entitled to the payment of twenty-five hundred dollars. Furthermore, the payment of January 21st was *two thousand dollars,* not twenty-five hundred dollars. The subsequent payments of five hundred dollars and two hundred dollars were for labor. It seems clear, from the record, that the Browns never paid for the furnace and obtained no title to it. Friis paid for it and installed it in the Brown house.

Some question might arise between Friis and Bielas & O'Shaughnessy as to the ownership of the furnace. However, we cannot find in this transaction an oral agreement to pay the debt of another. Friis furnished and installed a

furnace in the Brown home, and he is entitled to be recompensed for its reasonable value, which was found by the trial court to be $499.55.

The testimony shows that Friis worked under his contract April 11, 12, 14, 17, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 30, May 1, and June 4. Nothing further was done until September 23rd, when he went to the house, made some adjustments, and started the furnace. The trial court was of the opinion that the work was completed June 4th, and that therefore the filing of the lien notice September 28th was too late under the statute.

■ Under the contract, it was the duty of Friis to see that the furnace was in proper operating condition. His obligation was not fully performed until this was done. Although no new materials were installed September 23rd, Friis did spend considerable time there on that occasion, making adjustments and becoming satisfied that the furnace was in proper working order. This work was not done under a new and independent contract. It was not done for the purpose of prolonging the time for filing the lien, nor of renewing the right to file a lien which had been lost by a lapse of time, but was done in furtherance of the original contract. See *Kirk v. Rohan*, 29 Wn. (2d) 432, 187 P. (2d) 607. We therefore hold that the last work on the contract was performed September 23rd and that the trial court erred in denying the foreclosure of the lien.

The court, because of the above mentioned ruling, refused to hear testimony concerning attorney's fees, and the case will have to be remanded to take such testimony.

■ The lien notice included Lots 1, 2, 3, 4 and 5 of Block 9; Lots 1, 2, 3, 4 and 5 of Block 10; and all of Block 11. The testimony is clear that the work done on the house did not include Block 11, on which another house was located. Appellants complain that they had the house on Block 11 listed for sale and that they lost a sale because of the lien; that they had planned on paying for the new house with the proceeds of the sale; that they then mortgaged all of their property, including the house on Lot 11, for $18,000,

as a result of which they were obliged to pay interest on the mortgage in the sum of $1,129.12, in which sum they claimed damage. The testimony and the offer of proof concerning damages are so indefinite that we are unable to determine whether or not the appellants have been damaged by the inclusion of Lot 11 in the lien notice. In other words, they have failed to prove damage.

The judgment is affirmed on appellants' appeal and reversed on respondent's cross-appeal. The cause is remanded with directions to take testimony on the question of attorney's fees.

BEALS, HILL, GRADY, and DONWORTH, JJ., concur.